Good morning. May it please the court, my name is Jason Hannon. I work as an assistant federal defender in the Tucson, Arizona office. And we challenge the sufficiency of the evidence at trial. Can I ask you, we got this recent letter, where is your client right now? He is in custody in Florence, Arizona, charged with illegal re-entry. Okay. All right. I just wanted to make sure because it affects what's available in terms of, I think initially at the time that the parties were briefing this, he was gone, right? He was deported. He had been deported to Mexico, yes. Okay. Thank you. And as far as the other two issues, I guess those would be 04-10-413 and 04-10-446. Those cases, we've essentially conceded that the case should be remanded to the district court for sentencing in light of Booker, if the court determines that there was sufficient evidence at trial for the conviction. And so getting back to the first appeal issue, the challenge to the sufficiency of the evidence, the reason why the evidence was insufficient in this case has to do with the unique and fortuitous manner in which the two Mexican citizens, undocumented, entered into the truck that brought them in the United States. And I want to emphasize those facts because it's really the heart of the case. The two Mexican citizens were cousins, and they came from the interior of Mexico to the border, looking for a way to get into the United States illegally. They had no prearranged plans, and they met a random fellow on the street, and the person simply said, well, I don't know how you can get in. And then he saw a moving truck, and he said, well, that truck is going to the U.S. The two Mexican citizens. I'm sorry? They asked him, how do we get to the United States? And he said, that truck right there. So you, isn't that what the, isn't that the language? Yeah, and the citizens also called him a random person, just not paying for anything. Sure, but the citizens also expected to pay. Does that cause you any problem with your argument? They said they expected to pay. Each of them at first said. Did they say they expected to pay? One of them said he expected to have to pay, and that's simply because he talked to other people who were trying to get into the United States illegally. Well, this is what usually happens. You have to pay $1,500, $1,000. In no way did the government prove that that's how this case operated. I think courts are under a little bit of a misconception about how these things operate. They are not always alien smuggling operations. Folks, families just get together, they'll buy a car from a smuggler and come in. They're just random events, and the government did not prove an alien smuggling operation in this case regarding the financial motive of the driver. All right, well, you can't hear, when you're talking sufficiency of the evidence, you can't re-argue it like you're re-arguing to a jury. But you have to take the facts with all inferences in favor of the prosecution in this situation. So tell us what those facts are and tell us why that's not sufficient right there. Because Judge Ferris has mentioned, you know, they said, well, how do we get to the United States? They point out a truck. There was testimony that at least one of them expected to pay, and there were some amounts there. There was testimony about what was in the bed of the pickup and pull something over the top. There were a number of people. So tell us, you know, what are the worst facts for you and why that's not enough? Because that's what you have to do to prevail. We don't have evidence beyond a reasonable doubt. The driver even knew that those two entered into the truck. All right, but that's not the standard for sufficiency of the evidence. And a reasonable – there was not enough evidence for a reasonable jury to conclude that fact. The truck was moving as they saw the truck. It did not slow down or speed up. They immediately entered the truck and covered themselves with a tarp. We don't have any idea whether the driver saw them and even knew that these two folks had entered into the truck. Additionally, regarding expectation of payment, in the cases where they found an expectation to pay to be sufficient, the government has proven an alien smuggling operation and the driver's membership in that organization. None of that was done in this case. We simply have one of the material witnesses saying, well, I expect it to pay a certain amount, and who also earlier said he expected it to be free. So the central issue is a reasonable jury could not have inferred from the evidence that the driver even knew that they had entered the truck, and that's because the car didn't slow down, it didn't speed up. There was no – All right. How fast was it going? We just have that it was fast enough – not fast enough so that they were able to go up to the vehicle. We don't have an exact sort of miles per hour or anything, but it was going slow enough for them to get into the truck, but it was going fast enough that they had to quickly get up to the truck, was my impression of the evidence. So we have a truck that's simply moving at the time, and the two of them wanting to hide from authorities as well may have hid themselves precisely from the driver himself. There were two equally plausible inferences that could be made from the evidence in this case. One was that the driver saw them enter in. How do we have to review it, though? Well, I – That's a jury argument. There are two ways to look at it, and if there's another way to look at it and there's evidence, then you've got substantial evidence. That's all it takes. Well, I've referred to the court because there's no factual case that's been reviewed by the Ninth Circuit in this context. I've pointed the court to two drug cases. One's a juvenile case, and another is Corral-Gastelum. And I want to go through the analysis the court did there because it's an analysis I'm asking the court to do here. In one of those cases,  the agents tracked the defendant's footprints from where they were found to the marijuana backpacks. They found a sock hanging in the tree. One of the guys had no socks, just the shoes. Now, in that case, the jury could have inferred that he was involved with the backpacking operation. They could have also inferred that he was not. And the court looked at that circumstantial evidence and simply said it's too weak. It doesn't foreclose the equally plausible explanation that he had nothing to do with it. And I think that that case is a powerful example of how beyond a reasonable doubt means more than simply making an inference, taking a leap of faith that we should make this inference or that inference. There were 23 people in the truck, right? 15 in the bed. No, was it 15 in the front and 8 in the bed? And Balderas was where there were 15 in the front of the truck? And did he run, too? And that is the fatal legal error the government made. They kept only 2 material witnesses, and they were only the 2 that had jumped in at the last minute, and we have no idea if the driver even knew about them. That is precisely the difficulty in this case. I literally had to get up there and tell them, well, there was evidence that surely he would have known these people were in the cab, but yet these 2 he didn't know about. But we're not reviewing for whether it's an error on the 2 material witnesses, right? Well, no. What I'm trying to allude to is that because they chose those 2 material witnesses who had no contact with the driver and had no idea what was going on with that truck and where it was going at the time, they just took a leap of faith to get in the truck and there wasn't sufficient evidence for the driver to know that they were there. Do you want to save the balance of your time for rebuttal? I do. Thank you. May it please the Court, Brad Giles appearing on behalf of the United States, the appellee and cross-appellant in this matter. Your Honor, this case presents 2 issues for the Court. First of all, the District Court in this case correctly denied the defendant's motion for judgment of acquittal based upon the ample evidence presented by the government at trial showing that this defendant knowingly transported the 2 named material witnesses for the purpose of commercial advantage for private financial gain. You say knowingly transported these 2. The indictment charged the defendant with transporting specifically these 2, right? That's correct, Your Honor. Now, what's the proof that he knowingly transported them? Your Honor, there are approximately 8 specific areas that show that this defendant specifically knowingly transported these 2 individuals. The first thing that we should look at is how they were picked up in Sossabee, Arizona. This defendant, there is evidence of an organization here and I'll get into that, but this defendant was driving slowly through town. I believe the record of testimony was 10 to 15 and down in Mexico that would have been kilometers, not miles per hour. So very slowly through town. When they get in the vehicle, everyone else in the bed of the truck is asleep and that's what the testimony was. They get in, they're told that there's a tarp back there, there's a carpet for transporting illegal aliens and they're told to get in and cover themselves up. Now, a rational jury could find that when 2 individuals in broad daylight get into the back of a pickup truck as it's slowly cruising down the street and this truck is almost full, the evidence is that they're the last 2 people to get in and then the truck takes off immediately after they get in, showing that the defendant was topping off his load and then heading out of town. So there is evidence and a rational jury could find that you would see 2 people get in next to the tailgate and you would feel them get in your car. Interesting. As Mr. Hannan said, isn't it equally plausible that these were just stowaways? Your Honor, I think that if we do have an equally plausible argument, that goes in favor of the government because all inference of fact should be drawn in favor of the jury's verdict. But I think based on the evidence, what we find is that even if they were stowaways, the driver would have seen them. They got in next to the tailgate and if the driver were looking in his rearview mirror, they would have been the first 2 people he would have seen based on his line of sight to the tailgate. Additionally, when the Border Patrol agent pulled these people over... Are you drawing an inference from some kind of diagram in the evidence or what? Your Honor, I'm drawing an inference from what a rational jury would know about a truck. They've seen pictures of this truck. Even though the evidence is that as soon as they clambered aboard, somebody else in the back told them to get under cover? Your Honor, specifically what I'm referring to is Agent Behan's testimony when he intercepts the truck after it's already entered the United States. He states that he could see knees and elbows in the back of the truck bouncing as it went through washes. Now certainly if the defendant who was driving the truck could have seen anyone, it would have been these 2 who were next to the tailgate, showing that he knowingly transported these 2. What about the... To me it seems that the weakest part would be the financial gain. What does the record show about financial gain? Your Honor, the record actually as it currently stands is incorrect. Both of these material witnesses said that they expected to pay, and I would refer the court to excerpts of record at 17 where John Doe, the miner, says that it was his intention to pay for being smuggled into the United States, and excerpt of record 43 where Mirchand Baristan, the material witness, says that he was under the understanding that he would have to pay $1,000 to $1,500 to be smuggled in. There is evidence of a broader conspiracy here, as in Yoshida and Anglin. This truck was registered in Phoenix, Arizona. A jury heard that this defendant had been previously deported from the United States and wasn't allowed to be here legally. So he could not have gotten that truck from Phoenix, and he could not have registered it. He's caught driving this truck. The truck has been modified for alien smuggling. It's got blacked-out taillights, the tarp in the back, the carpet, and the blacked-out windows. And there's also evidence that he is doing this as part of the conspiracy with certainly this many people in the truck. He's loading up during the day in a border town in Sasabe and driving over time to come over under cover of darkness when he finally crosses into the United States. So I certainly think that, as in Yoshida and Anglin, there is evidence of a broader conspiracy here, and that's something that the jury can use to find that this was done for the purpose of financial gain and the defendant intended to benefit from that. There's also the evidence of the timing that this defendant would have had to see these people in the back of the truck. Material witness testimony is that he drove this truck for two to three hours. Now, the Border Patrol agent was behind it for a matter of minutes, I believe 15 minutes, and he had already seen the knees and elbows bouncing around in the back. So certainly during that time period, the defendant could have seen these people in the back of the pickup truck. Yeah, but, you know, I mean, knees and elbows. He doesn't know whose knees or whose elbows, right? Your Honor, if he sees the material witness's knees and elbows right next to the tailgate, then presumably... If he looks in the rearview mirror and says, oh, those knees aren't knees I recognize, is that what he's supposed to infer? Well, Your Honor, and again, it's a circumstantial case, but the court is allowed to use circumstantial evidence to sustain this conviction, and these people did get in in broad daylight. He can presumably see them through his rearview mirror, and his intent is also shown by the fact that he's driving this number of illegal aliens. He flees from law enforcement, so he clearly knows there's no benevolent reason, as in Angwin, for him to be doing this. You know, you won't get the answer, but when he comes, he's going to say, certainly he knew it. He had 15-something. I've forgotten the exact number in the cab and so many in the back. He's pinpointing the two who were charged, and he's saying that's the problem with the government's case because they, well, they charged him with it. But they saved these two witnesses, and on these two witnesses, he's arguing, he didn't know it. The whole problem with this case is, frankly, right? I mean, whoever did this at your office, I mean, you picked the wrong two material witnesses. Is that what it amounts to? Yeah, and as the record reflects, they did that so they wouldn't have to break up family groups. So we were stuck with what we had, but there is sufficient evidence here. And I think the strongest thing that portrays to your question, Your Honor, is the fact that when this truck is going through town, it's moving very slowly. It's been doing this long enough, the people in the bed are asleep. But when these two people get in, they get in, they testify, no one else gets in, and it's at that point when I ask the follow-up question, what happened after you got in? Well, we took off to cross into the United States. So that shows that this driver was topping off his load, and when these people got in, that's exactly what he did. He left to transport a full load of aliens into the United States, and that shows knowing transportation of these two. Let me just quickly ask you about, now that Mr. Balderas Granados is in custody, so you are abandoning your Plancart Alvarez request, and is it your position now is that it should be remanded? That's correct, Your Honor. This case is appropriate for a full sentencing remand. The judge in this case, following the Blakely decision... Well, there's a difference now between, you know, just what I would call an Amoline remand and vacating the sentence as erroneous and then remanding. Correct, Your Honor. Which do you want? Your Honor, the government would ask that the district court be given an opportunity to revisit this sentence. The district court has already conveyed to this court that the sentencing enhancements that it applied were in fact supported by the record, and it said, in fact, those facts are true, and this is in government supplemental excerpts of record. Well, what I'm getting at is you want the current sentence vacated or you just merely want a remand so the district court under Amoline can determine whether or not it should vacate the sentence? Your Honor, I think under Amoline what would happen if it were remanded because the district court would have an opportunity to convey to this court is under the advisory guidelines would we have made a different decision. So all you want is what we call an Amoline remand? I don't believe so, Your Honor, because I think the district court has already told this court that it just believed it didn't have the authority. So I think it's appropriate for a full sentencing remand where the district court can properly resentence this defendant under the advisory guidelines that now exist in a post-Booker environment. As I mentioned, the court did say that it felt it lacked the authority to apply these sentencing enhancements in Lake Lucas, Washington, and now following Booker we know that that, in fact, is not correct. The court does have the authority to use the advisory guidelines and to make decisions by preponderance of the evidence so long as it knows that that is advisory. Your Honor, based upon the totality of the circumstances in this case in the light most favorable to the government and the facts to it are presented, a rational jury could conclude, and in fact did conclude, that this defendant transported the two main material witnesses for the purpose of commercial advantage and private financial gain, and this is a case which is appropriate for a full sentencing remand following the Booker fan-fan decisions. Unless the court has any further questions, that's all I have. Thank you. Thank you, Your Honor. What do you think about the nature of the remand? Your Honor, we have no objection to a full remand. I am absolutely under the impression that the district court believed it had no authority to either up or lower below the standard sentencing guidelines because this happened between Blakely and Booker. This may be a case that we see every day, alien transportation, but it's a very important case because we have a chance to uphold the beyond a reasonable doubt standard. And in this case, there is reasonable doubt because there is an equally plausible explanation of what happened based on the evidence. It is the government's responsibility to foreclose that reasonable doubt. And the evidence, when you look at it, is just as consistent that he had no idea that those people jumped into the truck. And I ask you to please review the facts of those material witness statements. They're key to this case and would ask the court to consider that. Thank you. Thank you. These matters will stand submitted. Thank you.
judges: Farris, Tashima, Callahan